## Commonwealth v. Weeks.

*Criminal law—Murder—Twice in jeopardy.*

1. The murder of two persons by two separate blows at the same time, or, under some authorities, even by the same act, constitutes two offences, for each of which a separate prosecution will lie, and a conviction or acquittal in one case does not bar a prosecution in the other.

2. In such case, a verdict of guilty with penalty of life imprisonment in the first prosecution is not inconsistent with a verdict of guilty with penalty of death in the second.

3. In this case, a verdict of guilty of murder of the first degree was held not to be against the weight of the evidence or against the law.

Motion for arrest of judgment. O. and T. Fayette Co., March T., 1927, No. 57/273.

Before Hudson, P. J.; Henderson and Morrow, JJ.

*Charles L. Davidson* and *T. Watt Henderson*, for motion.

*E. D. Brown*, District Attorney, *Wade K. Newell*, First Assistant District Attorney, and *E. J. McDaniel*, contra.

MORROW, J., Sept. 6, 1927.—The jury found the defendant guilty of murder in the first degree, with penalty of death according to law, on an indictment charging him with killing Eugene Williams on Jan. 13, 1927. At an earlier trial on an indictment charging the same defendant with killing Marie Williams on the same date, he was found guilty of murder in the first degree, with penalty of life imprisonment. A new trial was not asked in that case. No sentence has been pronounced. Two indictments are still pending, the one charging him with the murder of Ida May Williams, and the other with the murder of James Williams, Jr., on the same date. Marie Williams, twenty-six years old, was the mother of Eugene, aged about five years, Ida May, about three, and James, Jr., a little less than two years old. On the

morning of Jan. 13, 1927, their home at Lambert was discovered to be on fire. When the fire was put out, the dead bodies of Mrs. Williams, Eugene and James were found in a bed, partly burned, in the upstairs rear room. Ida May was found dead on the floor at the head of the stairs, her death being due to suffocation caused by the smoke. The left side of the mother's skull was crushed. There was a fracture at the base of her skull, and other parts of her head and face also gave evidence of having been struck by some blunt instrument. The cause of death of the boy, Eugene, was a crushed skull. The entire right side of his skull was bruised and crushed. There were several distinct marks where struck by some blunt instrument. The death of the youngest child, James, Jr., was due to burns and to suffocation from smoke. It was evident that the mother and the older boy, Eugene, had first been killed by numerous separate blows of each, then the bed set on fire, resulting in the death of the two younger children.

Prior to the arraignment of the defendant on the indictment for the murder of Eugene Williams, his counsel interposed an objection to the effect that he could not be tried on this indictment without being placed twice in jeopardy for the same offence, having previously been tried and convicted, as above mentioned, on the charge of murdering the mother. It was contended that the two killings, being at the same time, constituted but one transaction and one offence. This contention was not sustained, exception was allowed the defendant and the trial proceeded, resulting in the verdict aforesaid. Counsel for the defendant filed a motion in arrest of judgment, based on the ruling and exception just mentioned, and this motion is now before us for disposition.

The offence of killing the boy was separate and distinct from that of killing the mother. Under the evidence, the two deaths resulted from separate blows. Consequently, it is clear that there was no double jeopardy: Com. v. Valotta, 279 Pa. 84 (88). It is not necessary to consider whether there would still be no double jeopardy had the same blow caused both deaths, but authority may be found in support of the proposition that the murder of two persons, even by the same act, constitutes two offences, for each of which a separate prosecution will lie, and that a conviction or acquittal in one case does not bar a prosecution in the other: People v. Majors, 65 Cal. 138; Com. v. Browning, 146 Ky. 770. The motion to arrest judgment cannot be sustained.

A motion for a new trial was also filed, but it was not pressed at the argument, counsel for the defendant conceding that there was no error in the trial or other reason to be advanced warranting a new trial. The only reasons set forth in the motion are that the verdict was against the weight of the evidence and that it was against the law. We assume that the latter reason was meant to embrace the same proposition urged in support of the motion to arrest judgment considered above. The question whether the verdict was against the weight of the evidence is answered by a brief review of the testimony. The defendant did not testify in this case and offered no evidence in his own defence. The Commonwealth proved the *corpus delicti*, as above recited, and introduced evidence that the defendant was seen near the house where the crime was committed about the time of its commission, he then going in the direction of his own home; that a revolver had been under one of the pillows of the bed where the boy and his mother were killed; that the butt of this revolver fitted into a depression in the boy's skull, made by one of the blows causing his death; that this revolver was subsequently found concealed in the defendant's bedroom, and, when found, was covered with fresh human blood; that the shoes found under the defendant's bed and

worn by him at times had human blood-stains on the lining of each, and that a pair of socks, like other socks found in the possession of the defendant, were taken from the vault of the outhouse at the defendant's home and had on them blood-stains corresponding in location to the stains in the shoes; that the defendant's home was only about 800 feet from the scene of the crime; that the defendant and his brother occupied the same bedroom; that the morning of the crime the brother went into the mine to work some two hours prior to the commission of the crime; that the defendant did not go to work, stating to his brother that he was not feeling well; that at the time the fire alarm was turned in and the crime discovered, the defendant was at home in bed, and on being advised of what had happened manifested little interest or concern and did not go to the scene of the crime, although Marie Williams, the deceased woman, was his wife's sister; that the husband of the deceased was in the mine, having gone to work some considerable time before the commission of the crime; and there was evidence to the effect that the defendant, some months before, had been having illicit relations with said Marie Williams at times when her husband was at work, and that this had led to a quarrel between the husband and the defendant, the latter being ordered to stay away. This, with other corroborating evidence, was given in detail, and, standing unexplained and uncontradicted, it is not clear how any other verdict than that rendered could have been expected. Two juries have found that the defendant did the killing. The suggestion that the two verdicts, the first with penalty of life imprisonment and the second with penalty of death, are inconsistent is without merit. The first might well have carried the extreme penalty, but it is easily conceivable how it might be concluded that the killing of an innocent little boy was more brutal and fiendish than the killing of a woman with whom the defendant may have been having secret illicit relations. If any murder merits the death penalty, this is manifestly one of that class. We see no reason why the verdict of the jury should not stand and why the sentence fixed by it should not be imposed.

*Order.*

And now, Sept. 6, 1927, for the reasons stated in the foregoing opinion, the motion to arrest judgment and the motion for a new trial are refused.